BENJAMIN BEEKMAN, Respondent, *v.* MINNIE STERN and
Others, Individually and as Executors, etc., of JOSEPH
STERN, Deceased, Appellants.

First Department, April 30, 1920.

**Landlord and tenant — summary proceedings — lease and supple-
mental agreements construed — when lease not terminated by
sale of premises — evidence to show circumstances surrounding
execution of supplemental agreement admissible — new trial not
granted for immaterial error in excluding evidence.**

The entry of a judgment by consent, reforming an original lease so as to
show that on a sale of the premises the lease would be terminated, does
not estop the lessee from contending, in summary proceedings, that
a supplemental agreement, entered into prior to said judgment, superseded
the original lease so far as the provision for termination was concerned;
the lease as so reformed must be construed precisely as if the provision
inserted by the judgment had been inserted originally.

In summary proceedings, instituted on the ground that the lease of the
defendant was terminated by the sale of the premises to the plaintiff,
in which it was contended that a provision in the original lease providing
for the termination thereof on the sale of the premises had been superseded
by a supplemental agreement granting a definite term, a further supple-
mental agreement to the effect that the owners would not sell the property
for a stated period, not being relied on by the landlord, could not be the
basis for a claim that the lease was terminated under it.

The effect of such further supplemental agreement being to show that it
was the intention of the parties that the lease was to be terminated by
a sale of the premises, it was proper for the tenant to show that it was
executed at the request of the landlord and for a particular purpose.

A new trial should not be granted in summary proceedings because of the
exclusion of evidence offered for the purpose of showing the intention
of the parties to the lease, where the lease itself is not of doubtful
construction.

In summary proceedings to dispossess the defendant on the ground that
the sale of the premises to the plaintiff terminated the defendant's lease,
evidence examined and *held*, that the original lease between the defendant
and the plaintiff's grantor which provided for the termination of the
lease on the sale of the premises was superseded by a supplemental agree-
ment and that by such agreement the defendant was given a fixed term
which could not be abridged by a sale of the property.

MERRELL, J., dissents, with opinion.

APPEAL by the defendants, Minnie Stern and others, from
a determination of the Appellate Term of the Supreme Court,

First Department, entered in the office of the clerk of the county of New York on the 7th day of November, 1919, affirming a final order of the Municipal Court of the City of New York in summary proceedings.

*J. Delahunty* of counsel [*J. J. Kirby* with him on the brief], for the appellants.

*David Bernstein* of counsel [*Weiss & Scheuer*, attorneys], for the respondent.

LAUGHLIN, J.:

On the 9th of April, 1914, plaintiff's predecessor in title executed a lease for the term of ten years from May 1, 1914, of the premises No. 422 West Fortieth street, on which there was a five-story flat with a three-story building in the rear thereof, to the decedent, Joseph Stern, who died on the 2d day of November, 1918, leaving a last will and testament, naming the defendants as executors. It was provided in the lease that the premises were to be used only as living apartments for respectable, white families. The rental was $110.42 per month after the 14th of July, 1914. It was provided that all improvements made by the tenant should be considered as affixed to the freehold and not removed and the tenant was to permit the landlord or his agents to show the premises to persons desirous of purchasing the same. The tenant deposited with the landlord the sum of $110 as security for the performance of his agreement to make certain specified improvements. The 16th clause of the lease was as follows: "If landlords sell or are defeased of title during the first two years of term, then tenant shall receive full amount of improvements he shall have made not exceeding twenty-five hundred dollars and if event happens, 3d, 4th, 5th, 6th, 7th or 8th years of term, then tenant to receive 85%–80%–60%–40%–30% or 10% respectively of the value of the improvements. And the said landlord doth covenant that the said tenant on paying the said yearly rent and performing the covenants aforesaid, shall and may peaceably and quietly have, hold, and enjoy the said demised premises for the term aforesaid." The lease was quite long and, for the pur-

poses of this appeal, it is sufficient to state that it contained the usual provisions. Five days after the original lease was made, the parties entered into a short supplemental agreement in writing referring to the original lease and stating that " the parties thereto desire to make an additional and supplemental agreement thereto." The 1st clause of the supplemental agreement is as follows: " That the term provided for in the aforesaid lease of April 9th, 1914, be and hereby is changed to a fixed term of twenty-one (21) years, to wit, from May 1st, 1914, to May 1st, 1935, in lieu of the term provided for therein." The 2d clause increases the rent three dollars and thirteen cents per month. The 3d clause provides for a deposit on May 1, 1923, as security for the faithful performance on the part of the tenant for the balance of the term. The 4th clause obligated the tenant to make improvements as follows: " Tenant agrees to install one enamel bath-tub with two bibbs and necessary piping and one toilet with flush tank in each apartment of premises, at and within the same period of time as is provided for in the aforementioned lease." The 5th clause provides that the improvements so made " shall become real property and belong to owner." The 6th clause provides that the improvements shall be made in a workmanlike manner and as required by the public authorities and regulations. The 7th clause provided that if the occupancy of the store shall cause rates of premiums of fire insurance to be increased, the tenant shall pay the additional rate. By the 8th clause the tenant agreed to assume responsibility with respect to the improvements and to save the landlord harmless therefrom. The 9th provided that the supplemental agreement should be in force and binding only on the express condition that the tenant should make the specified improvements in the manner therein provided and that otherwise it should become null and void. The original landlord sold the premises to the plaintiff on the 11th day of April, 1919. The summary proceeding was instituted and sustained on the ground that the lease of the tenant terminated on the sale by virtue of the provisions of clause 16 of the original lease quoted. The learned counsel for the appellants contends that the provisions of clause 16 were superseded by the supplemental agreement,

which was intended, as its phraseology indicates, to give the tenant a fixed term of twenty-one years. That such was the case is also indicated by the provisions of the supplemental agreement with respect to the extensive improvements which the tenant was required to make which were to become part of the freehold and belong to the owner. These provisions, unlike those in the original lease, are unconditional, whereas under the original lease, in event that the term was abridged by a sale, the tenant was to be reimbursed certain percentages of the cost of the improvements. The tenant offered to show that the improvements required to be made and made under the supplemental agreement cost $6,900, but the evidence was excluded. Respondent relies largely on a judgment of the Supreme Court, entered on the 22d of November, 1916, in an action by the original landlord against the tenant for the reformation of said paragraph 16 of the original lease, by adding at the end of the first sentence of said paragraph the following: " and on making such payments, this lease shall cease and determine and become null and void." It appears that the judgment was entered by consent. The action came on for trial before Mr. Justice GREENBAUM and counsel for defendant conceded that it was the original intention of the parties that those words should be inserted and that the tenant had no objection to having them inserted by the judgment of the court. The supplemental agreement was not before the court and there was no adjudication with respect thereto nor was there any judicial construction of or adjudication with respect to the effect thereof on the original lease. It is, therefore, precisely the same as if those words had originally been incorporated in the lease. By consenting to the judgment instead of pleading the supplemental agreement and claiming that the supplemental agreement superseded said paragraph 16 of the original lease and that there was no necessity for reforming the original agreement, the tenant should not be deemed estopped from so contending when the protection of his interests required it. He conceded that it was originally intended that the lease should be terminated by a sale of the premises and consented that a provision to that effect, doubtless omitted through inadvertence, should be inserted. The lease, therefore, as so

reformed is to be construed precisely as if the provision inserted by the judgment had been inserted originally. There is another agreement, however, on which the learned counsel for the respondent also relies and that on its face tends to support his contention. It was signed by the parties to the original lease on the 21st of July, 1914. It refers to the original lease and to the supplemental agreement and recites that in consideration of one dollar and the performance of the covenants contained in the lease and the supplemental agreement, it was agreed that the original and supplemental agreements should be modified " in the following manner, to wit: That the parties of the first part will not sell or defease themselves of title in and to the aforementioned premises for a period of five years from the making of the aforementioned lease, and it is further

" Covenanted and agreed that said lease, and supplemental lease, shall in all other respects, excepting as herein modified, be and hereby is confirmed." This appears to have been a voluntary agreement on the part of the landlord, but it is claimed that it indicates that the parties understood that but for it the lease would be terminated by a sale of the premises any time after two years. The appellants, however, offered to show that this agreement was brought to the tenant by one of the landlords who requested him to sign it for a particular purpose and that it was not solicited by the tenant and that there was no consideration therefor. That evidence was objected to and excluded on the ground that it tended to vary the written instrument. That agreement, however, was not the one on which the landlord relied and it could not be claimed that the lease was terminated under it. It was only competent as tending to show the intention of the parties with respect to the meaning of the lease as modified by the supplemental agreement. That being its purpose and effect, it was competent for the tenant to show that it was executed at the instance of the landlord and for a particular purpose. If the evidence offered had been received, it might have appeared that the landlords realized that they had given the tenant a fixed term of twenty-one years and that this was an attempt to relieve them therefrom. If the construction of the original lease as modified by the supplemental agreement

were doubtful, I think the evidence with respect to the cost of the improvements to be made and which were made by the tenant and the evidence showing that the agreement of July 21, 1914, was signed by the tenant at the instance of the landlord and for a special purpose, should have been received; but the agreement of July 21, 1914, contains no covenant on the part of the tenant and since its only importance is its bearing on the construction of the lease and supplemental agreement, which I do not deem of doubtful construction, it is not necessary to reverse and grant a new trial on account of the exclusion of that evidence. I think that the tenant was given a fixed term of twenty-one years which could not be abridged by a sale of the premises. The landlords were at liberty to sell and convey when they liked but the purchaser took title subject to the lease.

It follows that the determination of the Appellate Term should be reversed, with costs to appellants, and the proceeding dismissed, with costs.

CLARKE, P. J., and DOWLING, J., concur; MERRELL, J., dissents.

MERRELL, J. (dissenting):

This appeal is by permission of a justice of the Appellate Division from a determination of the Appellate Term, First Department, affirming a final order of the Municipal Court of the City of New York, Borough of Manhattan, Third District, in favor of the plaintiff, respondent, landlord, awarding him the delivery of the possession in summary proceedings of certain premises, being No. 422 West Fortieth street in the borough of Manhattan, by reason of the expiration of the tenants' term.

The landlord, respondent, herein is, and at the time of the institution of said summary proceedings was, the owner in fee of the premises in question, having received title thereto under a deed from David M. Van Praag and Abraham Cohen, as executors of the last will and testament of Marcus Van Praag, deceased. The tenants, appellants, are Minnie Stern, Nathan Shapanka and Morris J. Gordon, individually and as executors of the last will and testament of Joseph Stern,

First Department, April, 1920.                [Vol. 191.

deceased.  On or about April 9, 1914, the landlord's grantors, as executors, executed to said Joseph Stern, the tenants' testator, from whom and under whose will the tenants derived possession of said premises, a lease in writing whereby the said landlord's grantors leased to the tenants' testator the said premises for the term of ten years from May 1, 1914, with the privilege of renewal of said lease for an additional term of five years.  The leased premises consisted of a five-story flat and a three-story building in the rear thereof.  The lower floor was used for store purposes, and the balance of the buildings was devoted to living apartments for tenants. The money rental specified in the lease for the entire property was $1,325 per annum, payable monthly at the rate of $110.42 per month, excepting the months of May and June and the first fifteen days of July in the year 1914, when certain improvements were to be made, was to be allowed, no rent being payable during said period of two and one-half months. The lease provided that the tenant should, at his own cost and expense, install in the front house one soapstone, two-section, four-bibb wash tub, with covers, one new sink, with two new bibbs, and one new coal range, with hot water boiler attached, in each apartment, and one ceiling gas outlet with suitable fixture in each room of each apartment and one outlet in vestibule and each landing of the public hall and two outlets in the cellar and one dish closet in each kitchen of each apartment; that said improvements should have proper accessories and be done in a proper and workmanlike manner and approved by all public departments having jurisdiction thereof.  The lease further provided that the tenant should plaster, paint and decorate and paper the public hall and eight apartments and kalsomine the cellar, and that he should improve the rear house in like manner as front house where practicable, and also where demanded by the public departments or authorities; that the work of improvement above provided for was to be commenced on or before May 10, 1914, and be completed on or before July 10, 1914.  All improvements made by the tenant were, by the express terms of the lease, " to be considered as affixed to the freehold and not to be removed either during tenancy or at the termination of this lease."  The record before us does not disclose what the fair

rental value of the leased premises was, but it would seem plain that the parties deemed the installation of the aforesaid extensive improvements by the tenant, all of which attached to the leased premises, a very considerable part of the rental to be paid by the tenant. Such improvements, of course, greatly enhanced the rental value of the several flats and enabled the lessee to demand increased rentals from subtenants. He would undoubtedly become reimbursed during the long term of his lease for the amount expended by him for such improvements, and provision was made by the 16th clause of the lease for the reimbursement of the tenant for such repairs, not exceeding $2,500, if he should be compelled to surrender possession of the premises through a sale thereof by the landlords or a defeasance of title during the first two years of his term, and in the proportion stated in the 16th clause of the lease, if such event should happen in the succeeding years of his term up to the eighth. Said 16th clause of the lease provided as follows:

" 16th. If landlords sell or are defeased of title during the first two years of term, then tenant shall receive full amount of improvements he shall have made not exceeding twenty-five hundred dollars and if event happens, 3rd, 4th, 5th, 6th, 7th or 8th years of term, then tenant to receive 85%–80%–60%–40%–30% or 10% respectively of the value of the improvements. And the said landlord doth covenant that the said tenant on paying the said yearly rent and performing the covenants aforesaid, shall and may peaceably and quietly have, hold and enjoy the said demised premises for the term aforesaid."

On April 14, 1914, five days after the execution of the lease, the said lessors and the lessee entered into a supplemental agreement in writing wherein the parties recited, referring to the lease of April 9, 1914, as follows: " * * * Whereas the parties thereto desire to make an additional and supplemental agreement thereto, * * * ," and by which supplemental agreement it was provided as follows:

" 1st. That the term provided for in the aforesaid lease of April 9th, 1914, be and hereby is changed to a fixed term of twenty-one (21) years, to wit, from May 1st, 1914, to May 1st, 1935, in lieu of the term provided for therein."

Said supplemental agreement was made upon the condition therein expressed that the tenant should pay in addition to the rental expressed in the lease an additional sum of three dollars and thirteen cents each and every month of said term, and should install one enamel bath tub with two bibbs and necessary piping, and one toilet with flush tank, in each apartment of the premises, within the same period of time as provided for in the lease.

On July 21, 1914, the parties to said original lease and supplemental agreement entered into a third agreement in writing reciting the execution of the original lease on April 9, 1914, and the agreement supplemental thereto on April 14, 1914, and further agreed:

" That said aforementioned agreement, and supplement thereto, shall be modified in the following manner, to wit: That the parties of the first part will not sell or defease themselves of title in and to the aforementioned premises for a period of five years from the making of the aforementioned lease, and it is further

" Covenanted and agreed that said lease, and supplemental lease, shall in all other respects, excepting as herein modified, be and hereby is confirmed."

This last-mentioned agreement was executed by the lessors and the lessee and was ratified, approved and confirmed in writing by the beneficiaries under the last will and testament of Marcus Van Praag, deceased.

The five-year period mentioned in said last agreement of the parties expired on April 9, 1919, and two days later the premises were sold and conveyed by the said executors of Marcus Van Praag to the plaintiff, respondent. Thereafter, in April, 1919, due tender was made by said executors to the tenant in possession of said leased premises under said lease, of the sum of $1,600 in cash, being sixty per cent of the sum of $2,500, stipulated to be paid the tenant as and for the specified improvements to be made by the tenant, in case of a sale of the leased premises by the landlords at the end of the fifth year of the term of the lease. The tenant refused to accept such tender or to yield possession of the premises. Thereupon the owner of the premises instituted summary proceedings for possession of the said real property asserting

that the tenancy created by the lease of April 9, 1914, was terminated by the sale of the premises to the petitioner by said executors on April 11, 1919. The Municipal Court made a final order on June 16, 1919, granting the present owner the possession of said premises by reason of the expiration of the tenant's term. The tenants have appealed, claiming that the lease of April 9, 1914, leasing said premises to their testator for the term of ten years with the privilege of an extension of five years was abrogated by the supplemental agreement executed on April 14, 1914, fixing the term of the lease at twenty-one years, expiring on May 1, 1935, and that, therefore, the present tenants of the premises cannot be removed therefrom as upon expiration of term. It seems to me that the order of the Municipal Court was correct, and that the appellants are wrong in their contention. The three instruments executed by the parties must be read together. By the first instrument the premises were leased for a term of ten years with the privilege of five years additional. This original lease of April 9, 1914, provided in its said 16th clause that if the landlords should sell the premises or were defeased of title during the first two years of the term, then the tenant should receive the full amount of any improvement he should have made, not exceeding $2,500, and if the defeasance occurred in the third, fourth, fifth, sixth, seventh or eighth years of the term, then the tenant should receive eighty-five per cent, eighty per cent, sixty per cent, forty per cent, thirty per cent or ten per cent, respectively, of the value of such improvements. The supplemental agreement made five days later merely changed the possible term of fifteen years provided by the lease as originally made to a fixed term of twenty-one years — only six years longer than the possible term originally agreed upon. As a condition of such extension the tenant agreed to pay a slight advance in monthly rental and to install in addition to the extensive improvements specified in the lease, a bath and closet and appurtenances in each apartment. In all other respects the lease remained as originally made. The tenant urges that the improvements placed upon the property pursuant to the lease, as modified, have cost upwards of $6,900 — much in excess of $2,500 asserted by her as the value of the improvements contemplated at the time of the

execution of the original lease, and that she will suffer undue hardship if deprived of the premises at the end of the fifth year. The fallacy of appellants' position in this respect is apparent when we consider that the original lease did not fix the value of the proposed improvements which undoubtedly far exceeded $2,500 in cost to that sum. The tenant, manifestly, as a part of the rental which he was to pay, agreed to make the specified improvements, at whatever expense might be required, and in case the tenant was compelled to yield possession before the expiration of the eighth year of the term of the lease he was to be reimbursed upon a basis of $2,500. The record is barren of any evidence showing that the annual rental paid by the tenant together with the balance of the cost of improvements paid by her after deducting the percentage under the 16th clause of the lease was greater than the fair rental value of the premises while occupied by her under the lease. By the supplemental agreement additional improvements to the apartments were provided by way of baths and toilets. Such improvements, of course, enabled the lessee to demand increased rentals of subtenants and were, therefore, of advantage to him. The improvements required some additional expenditure on his part, but the investment may well have been to his net financial gain. The term of his lease was extended six years with slight increase in money rental. And three months later, or at about the time fixed by the lease, as supplemented, for the completion of the improvements, the parties entered into the third written agreement of July 21, 1914, modifying the lease and supplementary agreement in a single respect, viz., that the lessors would not sell or defease themselves of title in the leased premises for a period of five years from the making of the lease. And the said parties in said modification agreement of July 21, 1914, further expressly " covenanted and agreed that said lease, and supplemental lease, *shall in all other respects*, excepting as herein modified, be and hereby is confirmed." (Italics the writer's.) In view of such confirmation, can it be possible that the parties, by the supplemental agreement of April 14, 1914, intended to abrogate the provisions of the original lease contained in its 16th clause, providing for a surrender of possession of the leased premises

by the tenant upon a sale of the premises by the lessor? Assuredly not.

Most conclusive evidence that the parties regarded the 16th clause of the lease as unaffected by the supplemental agreement of April 14, 1914, is furnished by the fact that in 1916 an action was brought in the Supreme Court by the executors of Marcus Van Praag, deceased, against the lessee, Joseph Stern, to reform the lease of April 9, 1914, and on November 22, 1916, a judgment was entered in said action wherein it was

" Adjudged, that the lease made by David Van Praag and Abraham Cohen, as executors of the last will and testament of Marcus Van Praag, deceased, as landlords, and Joseph Stern, as tenant, dated April 9th, 1914, of premises #422 West 40th Street, Borough of Manhattan, City of New York, be and the same is hereby reformed by inserting the words ' and on making such payments this lease shall cease and determine and become null and void,' at the end of the first sentence of the Sixteenth Paragraph of said lease, so that the said first sentence of the Sixteenth Paragraph of said lease shall now read:

" ' Sixteenth: If landlords sell or are defeased of title during the first two years of the term, then tenant shall receive full amount of improvements he shall have made, not exceeding Twenty-five hundred dollars, and if event happens third, fourth, fifth, sixth, seventh or eighth year of term, then tenant to receive 85%, 80%, 60%, 40%, 30% or 10% respectively of the value of the improvements, and on making such payments this lease shall cease and determine and become null and void.' "

The plaintiffs, lessors, sought in said action to reform the 16th clause of the lease as originally made by adding thereto the words: " and on making such payments this lease shall cease and determine and become null and void." The tenant was made the sole party defendant and appeared in said action by the same attorney who represents the present tenants, appellants, herein who have succeeded to the original tenant's interest under said lease. Said reformation action coming on to be heard in Special Term of the Supreme Court, the following very significant proceedings were had:

" Appearances: For Plaintiffs: Simon M. Platt, Esq. For

Defendant: John Delahunty, Esq. Mr. Delahunty: The plaintiff states that all he desires in this case is to reform Exhibit A, by adding at the end of the Sixteenth Paragraph thereof, that on payment of such sums of money this lease shall thereupon terminate and become null and void. The Court: Is that correct? Mr. Platt: Upon tendering payment of such sums of money the lease shall be null and void. Mr. Delahunty: *In behalf of the defendant I admit that it was the original intention of the parties that these words should be inserted there.* Upon that I ask your Honor to allow us to submit findings. The Court: *And you consent that judgment may be entered for this, limited to that, without costs?* Mr. Delahunty: *Yes.* Mr. Platt: Yes. The Court: Submit findings, let Mr. Delahunty have a copy of the findings before they are submitted, perhaps you can agree on them." (Italics are the writer's.)

And in accordance therewith the aforesaid judgment of reformation was duly entered. Such conduct by the parties and their counsel did not evidence any thought that the reformed clause had years before been abrogated. If the 16th clause had been superseded by the agreement of April 14, 1914, what possible necessity or reason could there be for reforming the clause by adding the words: " On making such payments this lease shall cease and determine and become null and void? " Said words were, of course, the very essence of the clause, without which the clause would be meaningless. They were predicated upon the payments of the percentages provided in case the tenant should be deprived of possession through a sale of the premises or a defeasance of the lessors' title. Why was the defendant consenting in open court to their insertion if the clause had been abrogated? Had the defendant thought the 16th clause dead he would scarcely have thus consented to its resuscitation by infusing therein its very life blood. On the contrary, he would have been prompt and diligent to oppose the efforts of the landlord to make the same enforcible. In my opinion, the said judgment is *res judicata* upon the question at issue here. Not only is this true as to the issues actually and necessarily litigated in the action and which incidentally must have involved the virility of the clause reformed, but it is *res*

*judicata* upon every issue which might have been litigated therein. The applicability of such doctrine is well stated in Ruling Case Law (Vol. 15, § 430) as follows: " The foundation principle upon which the doctrine of *res judicata* rests is that parties ought not to be permitted to litigate the same issue more than once; that, when a right or fact has been judicially tried and determined by a court of competent jurisdiction, or an opportunity for such trial has been given, the judgment of the court, so long as it remains unreversed, should be conclusive upon the parties, and those in privity with them in law or estate."

I think the defendants, appellants, are clearly estopped from now assuming a position inconsistent with that of their predecessor in said reformation action.

That the parties did not by the supplemental agreement of April 14, 1914, intend to in anywise abrogate the provisions of the lease with reference to a termination thereof upon a sale of the leased premises, or a defeasance of the lessors' title, but that they at all times understood and intended that such provisions should remain in full force and effect, seems to me to be conclusively shown in their every act in the premises.

I am, therefore, of the opinion that the final order of the Municipal Court, awarding to the landlord the delivery of the possession of the leased premises, by reason of the expiration of the tenant's term, was correct, and should be affirmed, and that the determination of the Appellate Term should be affirmed, with costs.

Determination and order reversed, with costs in this court and in the Appellate Term, and proceeding dismissed, with costs.